UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES of AMERICA,

v.

MICHAEL P. ANDREWS,
        Defendant.

Case No. 1:11-cr-10062-NMG
(USA v. ROSE, et al.)

DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS STATEMENTS

Preliminary

Defendant moves to suppress evidence obtained from unwarned custodial interrogation by FBI Agents and Detectives of the Bourne Police Department on November 19, 2012. Defendant further moves for suppression of statements made in response to follow up questioning that was not sufficiently attenuated from the first *Miranda* violation. See, *Miranda v. Arizona*, 384 US 436 (1966); and *United States v. Dickerson*, 530 U.S. 428, 433 (2000)(affirming *Miranda* as a substantive constitutional law and not merely procedural rule).

FACTS

The facts are set forth in defendant's July 3, 2012 affidavit in support of this motion. The defense reports the relevant events as follows, subject to what may be determined at an evidentiary hearing.

Jamie Pires, a detective from the Falmouth Police Department called Andrews and told him he needed to speak to him. His apparent purpose was detain Andrews for the arrival of FBI agents. He met Mr. Andrews in his father's house and departed to the

1

vegetable stand of the Tony Andrews Farm. Two agents and a Bourne Police Captain arrived moments later and brought Andrews into the small office in the vegetable stand. Andrews reports the office to be six by twelve feet with one narrow window outside window. Andrews, weighed 140 pounds and is of slight build. He was alone in the room with the two agents and the captain. Detective Pires remained just outside the door in control of the remainder of the farm stand. Each of the four law enforcement officers present dwarfed Andrews. Andrews reports there was little room to move in the confines of the office and that he could not have gotten up and left the interrogation. The FBI's Form 302 Report of Investigation maintains that agents warned Andrews he would not be arrested that day. Agents told Andrews that he should cooperate with them. Andrews has no recollection of being told that he would not be arrested. He believed he would be arrested if he did not cooperate. He reports the tone of the encounter to have been harsh and intimidating.

Agents confronted him with incriminating recordings from wire intercepts and told him he faced a minimum ten-year sentence.

Agents will likely concede that they did not give Andrews his *Miranda* warnings. The relevant report says Andrews was not under arrest. The report also mentioned that Andrews stated he wished to contact his counsel. Andrews says he did not do so because agents told him that calling his lawyer would ruin things for Andrews if he did.

Constrained to a degree associated with arrest, with no *Miranda* warning and actively discouraged from contacting counsel, Andrews made several incriminating statements that may be used to support the government's case in chief. The interrogation lasted approximately 20 to 30 minutes. The officers left without arresting Andrews.

Three days later on November 22, 2010, agents contacted Mr. Andrews requesting a clarification of one of his earlier statements. Andrews obliged by correcting his earlier statement about the location of an object on an adjacent street. Andrews reports feeling obliged to cooperate with the follow up questioning on the basis of his earlier interrogation.

ARGUMENT

POINT I:<br>
ANDREWS WAS INTERROGATED IN CUSTODY AND<br>
DID NOT RECEIVE MIRANDA WARNINGS

Defendant Andrews' unwarned statements were given pursuant to custodial interrogation and should be suppressed as a violation of the *Miranda* rule. *Miranda v. Arizona*, 384 US 436 (1966). See, generally, Geo. L.J. Ann. Rev. Crim. Pro. (2010), pp. 179-188.

A.  *Contours of the Miranda Rule*

In *Miranda*, the Supreme Court found that custodial interrogation had the potential to undermine the Fifth Amendment privilege against self incrimination by potentially exposing a defendant to psychological or physical coercion. *Miranda,* 384 US *supra* at 448-50, 455. The rule recognizes that "in a custodial interrogation, the police have the capacity to dominate the scene to such an extent that the risks of coercion and intimidation are unreasonably high." *United States v. Melendez*, 228 F.3d 19, 22 (1st Cir. 2000). The Court therefore established a prophylactic rule of police procedure requiring that the subject be given certain warnings about his constitutional rights and the potential consequences of interrogation. *Miranda,* 384 US *supra* at 444.

B.  Determining Whether Defendant In Custody

As this Court is doubtless aware, *Miranda* warnings must be given only when a subject is in custody and subjected to interrogation. For the purposes of a *Miranda* inquiry, custody means the "deprivation of freedom of action in any significant way." *Id.* Stated differently, the inquiry is whether there was a "'formal arrest or restraint on freedom of movement' of the degree associated with formal arrest." *Stansbury v. California*, 511 US 318, 332 (1994) quoting *California v. Behler*, 463 US 1121, 1125 (1983). A court makes the determination of whether, under the totality of the circumstances, a reasonable person would not feel free to end the encounter and leave. See, *US v. Mittel-Carey,* 493 F.3d 496, 499-500 (1st Cir. 2007)(upholding allowance of motion to suppress).

In this Circuit, the determination that a person is or is not in custody is a mixed question of fact and law, subject to *de novo* review. *Id.* " The district court's findings of historical fact concerning the circumstances of the interrogation are reviewed for clear error." *Mittel-Carey* citing *United States v. Fernandez-Ventura*, 132 F.3d 844, 846 (1st Cir. 1998).

C. Andrews in Custody Under Law of this Circuit

1.  Four-Part Test in 1st Circuit

Michael Andrews was in custody under the analysis set forth in the law of this Circuit. Though not an exhaustive list, the Court of Appeals has identified four factors "which ought to be considered when custody is at issue, including '[1]whether the suspect was questioned in familiar or at least neutral surroundings, [2] the number of law enforcement officers present at the scene, [3] the degree of physical restraint placed upon

4

the suspect, and [4]the duration and character of the interrogation." [citations omitted] *Mittel-Carey,* 493 F.3d *supra* at ____.

    2.    Factors as Applied to Andrews

        a. Physical Control

The most important factor among the four is the extent of "physical control that the agents exercised over the defendant during the search and interrogation." *Mittel-Carey,* 493 F.3d *supra* at ____ citing *United States v. Nishnianidze*, 342 F.3d 6, 14 (1st Cir. 2003).

Agents asserted physical control by isolating the defendant and packing him with physically overwhelming policemen in the small office of a rural farm stand in late November. The agents lured defendant from his home to his father's farm house and from there took defendant to a small office in an empty farm stand. Compared to Andrews, the agents and detectives were overwhelming large. The fact that the agents knew to leave the office door open to make the setting appear non-custodial is of no consequence. Andrews was alone in a small room with big law enforcement officers.

        b.    Character and Length of Interrogation

The duration and character of the encounter also indicates custody. While the duration of interrogation was not as long as the 90 minutes in *Mittel*, it was intense and confrontational. Agents confronted Andrews with surprising and potentially damning evidence, a recording of Andrews on a federal court-ordered wire tap speaking to a drug dealer about a significant transaction. Agents then informed defendant that he was facing a long prison sentence, more than ten years at a minimum. When defendant asked to speak to a lawyer, agents dissuaded him and told him he did not want to contact counsel.

Defendant, fearing arrest, complied, further evidence that he believed himself under the agents' control.

   c.  Familiarity of Settings

While Andrews was doubtless familiar with the farm stand, it should not be considered a familiar setting for *Miranda* purposes. Andrews was taken out of his father's house and his father then departed, leaving Andrews alone. While farm stand may have been a "familiar setting" in summer, the isolated meeting occurred in November, making the closed farm stand an lonely rural place.

   d.  Number of Agents Present

The number of agents present also indicates that Andrews was in custody. Andrews is small and slight of build.  The agents and detectives by contrast are large and physically fit.  It is highly unlikely that a man in Andrews' situation would have mustered the confidence to push by the four agents and detectives and walk from the office into the open.

   e.  Counsel, Another Factor

The exchange about contacting counsel is perilously close to disregard of a Sixth Amendment invocation.  The applicable Report of Investigation mentions that Andrews inquired about contacting counsel and that Andrews was told he could do so.  The report provides no further details on the point, but it is consistent with Andrews' statement that he was told he might contact counsel, but that speaking to a lawyer would "\_\_\_\_\_ things up for him" and other discouraging statements.

6

  3.  Questioning Should Have Ceased When Andrews Invoked

  Andrews' statements should be suppress for agents' failure to honor his invocation of counsel.  The *Miranda* right to counsel attaches when a subject makes a clear and unequivocal request for counsel.  After the subject invokes, questioning must cease.  See, *Davis v. US,* 512 US 452, 458-59 (1994).   When Andrews asserted that he wanted to speak to a lawyer, agents responded by telling him in no uncertain terms it was not in his interest to do so.


POINT II:
SUPPRESSING SECOND
STATEMENT

  Mr. Andrews believes there is a sufficient factual and legal basis to allow suppression of his November 22, 2010 responses to telephonic follow up questioning.  A subsequent statement must be suppressed as fruits of the poisonous tree when "[f]irst the Miranda violation [is] 'not merely technical.' Second, there [is] 'a substantial nexus between the violation and the second statement.' Third . . . 'the second statement is not itself preceded by an adequate Miranda warning.'" *United States v. Byram*, 145 F.3d 405 (1st Cir. 1998).  Further facts may be developed at hearing to support this claim.

CONCLUSION

I declare under penalty of perjury that the foregoing is true and correct. 28 USC §1746.

Dated this 3rd day of July, 2012 at Boston, Massachusetts.

                        Respectfully submitted,
                        MICHAEL ANDREWS, Defendant
                        By his Counsel,
                        /s./ Kevin L. Barron
                        KEVIN L BARRON 550712
                        ATTORNEY AT LAW
                        92 STATE ST 6FL
                        BOSTON MA 02109
                        Tel. No. 617-407-6837

Certificate of Service

Undersigned counsel certifies he has caused counsel of record to be served today, July 3, 2012 through this Court's CM/ECF and that no party requires service by other means.
                        /s./ Kevin L. Barron
                        KEVIN L BARRON